IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SE PROPERTY HOLDINGS, LLC,    *
                              *
        Plaintiff,            *
                              *
vs.                           *  CIVIL ACTION NO. 19-00430-KD-B
                              *
JEFF GREEN, *et al.*,         *
                              *
        Defendants.           *


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Jeff Green, Kirby Green Northcutt, and LBG, LLC's motion to dismiss count five,[1] or alternatively, motion to sever and transfer venue of count five, and supporting memorandum (Docs. 17, 18). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that the motion be **DENIED** in its entirety.

---

[1] The complaint and Defendants' motion to dismiss reference "count five," but the counts in the complaint are misnumbered, as there are only four claims asserted by Plaintiff in the complaint. (See Docs. 1, 17).

## I.  BACKGROUND

Plaintiff SE Property Holdings, LLC ("SEPH") is an Ohio limited liability company ("LLC") that is the successor by merger to Vision Bank. (Doc. 1 at 1). SEPH filed suit in this Court against six Defendants, asserting one claim for alter ego liability and three claims alleging fraudulent conveyances in violation of Alabama Code §§ 8-9A-4(a), 8-9A-4(c), and 8-9A-5(a). SEPH named as Defendants Jeff Green ("Green"); Green & Sons, LLC ("Green & Sons"); Coastal Commercial, LLC ("Coastal Commercial"); Wolf Creek, LLC ("Wolf Creek"); LBG, LLC ("LBG"); and Kirby Green Northcutt ("Northcutt"). (Id.).

SEPH alleges that on September 27, 2013, the United States District Court for the Middle District of Louisiana rendered a final judgment in excess of $25 million against Green, his son Lawrence Green, and a number of other related individuals and entities.[2] (Doc. 1 at 3). SEPH registered the judgment in this Court on March 27, 2014. (Id.); see SE Property Holdings, LLC v. Unified Recovery Group, LLC, No. 1:14-mc-00008-KD-MU (S.D. Ala. 2014) ("SEPH I"), ECF No. 1.[3] On November 12, 2014, this Court

---

[2] According to SEPH, Jeff Green served as the personal guaranty on the debts of two entities, and the Louisiana lawsuit on the guaranties resulted in the September 2013 judgment in excess of $25 million. (Doc. 25 at 2; Doc. 25-1).

[3] The Court takes judicial notice of court documents from SEPH I because they are public records that can be accurately and readily determined from sources whose accuracy cannot reasonably be

entered a charging order against Green's membership interests in a number of Alabama and Louisiana LLCs, including Green & Sons and LBG. (Doc. 1 at 3); see SEPH I, ECF No. 135. Green filed no objections to the charging order, so it became effective on November 26, 2014. (Doc. 1 at 3); see SEPH I, ECF No. 133, 135. To date, the judgment has not been satisfied, and there have been no payments to SEPH pursuant to the Court's charging order. (Doc. 1 at 3-4).

In the complaint, SEPH alleges that Green & Sons is the alter ego of Green, and that Green has fraudulently conveyed all or nearly all of Green & Sons' assets to insiders to avoid the charging order issued by this Court. (Id. at 9). SEPH alleges that on August 1, 2015, Green, through his alter ego Green & Sons, fraudulently conveyed a seven-acre tract located in Foley, Alabama to Coastal Commercial, an entity formed by his son, David Green. (Id. at 4-5, 9-12). SEPH further alleges that on March 17, 2016, Green, through his alter ego Green & Sons, fraudulently conveyed a thirty-acre tract located in Foley, Alabama to Wolf Creek, an entity formed and owned by David Green. (Id. at 4, 6, 12-15).

---

questioned. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) ("The district court properly took judicial notice of the documents in [the plaintiff's] first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)).

SEPH also alleges that Green was the sole owner of LBG, an Alabama LLC formed in October 2005 that owns 490 unencumbered acres in Washington Parish, Louisiana, consisting of a house and farm valued by Green (in May 2012) at $2,960,000.00. (Id. at 8). According to SEPH, at some point after April 21, 2014, Green fraudulently assigned his interest in LBG to Northcutt, his daughter. (Id.). SEPH alleges that all of these conveyances were fraudulently made in an effort to place Green's assets beyond SEPH's reach.

Upon being served with process, Green, Northcutt, and LBG (the "Moving Defendants") responded by filing the instant motion seeking the dismissal of SEPH's claim attacking the LBG assignment, or alternatively, seeking the severance and transfer of the claim to the Eastern District of Louisiana, based on improper venue; or, if venue is found to be proper in this forum, seeking discretionary severance and transfer of the claim. (Docs. 17, 18). SEPH filed a response opposing the motion (Doc. 25), and the Moving Defendants filed a reply (Doc. 28).

## II. <u>MOTION TO DISMISS OR, ALTERNATIVELY, SEVER AND TRANSFER COUNT FIVE BASED ON IMPROPER VENUE</u>

The Moving Defendants first assert that venue for the LBG fraudulent transfer claim[4] is improper in the Southern District of

---

[4] "Where a complaint sets forth multiple claims, venue must be established for each claim and each defendant." <u>Omega Patents, LLC v. CalAmp Corp.</u>, 2017 U.S. Dist. LEXIS 186645, at *5, 2017 WL 4990654, at *2 (M.D. Fla. Sept. 22, 2017).

Alabama, and that the claim should thus be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) or, alternatively, severed and transferred for lack of venue. (Doc. 18 at 3-9). SEPH maintains that venue is proper in this district under 28 U.S.C. § 1391(b)(2) (the so-called "transactional venue" provision), which states that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2); (see Doc. 25 at 5-11).

The venue statute "contemplates some cases in which venue will be proper in two or more districts." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003). "Indeed, under § 1391[5] a plaintiff does not have to select the venue with the *most*

---

[5] Section 1391(b) provides:

    **(b) Venue in general.**—A civil action may be brought in—

    **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

    **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

    **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

substantial nexus to the dispute, as long as [it] chooses a venue where a substantial part of the events giving rise to the claim occurred." Morgan v. North MS Med. Ctr., Inc., 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005) (emphasis in original). Nor is the term "substantial part," as used in § 1391(b)(2), properly read as a synonym for "majority." See, e.g., Anthony Sterling, M.D. v. Provident Life and Acc. Ins. Co., 519 F. Supp. 2d 1195, 1206 (M.D. Fla. 2007) ("Jenkins does not limit the term substantial part to mean the majority of the acts."). It is true that "[o]nly the events that directly give rise to a claim are relevant." Jenkins, 321 F.3d at 1371. However, it is also true that courts "should review the entire sequence of events underlying the claim." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) (citations and internal quotation marks omitted).

A defendant may assert the defense of improper venue under Federal Rule of Civil Procedure 12(b)(3). Rule 8(a) of the Federal Rules of Civil Procedure does not require that a complaint include allegations showing venue to be proper. See Fed. R. Civ. P. 8(a); Reyes v. JA & M Developing Corp., 2012 U.S. Dist. LEXIS 116324, at *7, 2012 WL 3562024, at *3 (S.D. Fla. Aug. 17, 2012) ("The Complaint itself is not required to include allegations showing venue to be proper."). However, when venue is challenged, the

---

28 U.S.C. § 1391(b).

plaintiff bears the burden of proving that the venue selected is proper. Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "As with a motion to dismiss in general, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." Whitwam v. JetCard Plus, Inc., 34 F. Supp. 3d 1257, 1259 (S.D. Fla. 2014). However, on a Rule 12(b)(3) motion, "the court may consider matters outside the pleadings such as affidavit testimony, 'particularly when the motion is predicated upon key issues of fact.'" Wai, 315 F. Supp. 2d at 1268 (citation omitted). Thus, to resolve such a motion, the court accepts all allegations in the complaint as true unless contradicted by defendants' evidence, and it draws all reasonable inferences and resolves all factual conflicts in the plaintiff's favor. Dyck-O'Neal, Inc. v. England, 2015 U.S. Dist. LEXIS 54800, at *5, 2015 WL 1911268, at *2 (M.D. Fla. Apr. 27, 2015).

Applying these standards to the present motion, the Court has considered SEPH's complaint, along with the testimonial and documentary evidence submitted by the parties that is relevant to the venue issues to be determined. The Court has also taken judicial notice of relevant court documents from SEPH I for the limited purpose of recognizing the events and subject matter of that litigation. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

The Moving Defendants challenge venue on the grounds that the Southern District of Alabama is not the district where Green and Northcutt reside, where a substantial part of the events or omissions giving rise to count five occurred, or where the property that is the subject of SEPH's fraudulent conveyance claim in count five is situated. (Doc. 18 at 4-7). SEPH concedes that venue is not proper under §§ 1391(b)(1) or (3), but it asserts that venue is appropriate in this district under § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here, and because a substantial part of the property that is the subject of the fraudulent conveyance claim in count five — i.e., the membership interest in LBG — is "situated" here. (Doc. 25 at 6-11).

As support for their motion, the Moving Defendants attach the declarations of Green and Northcutt. In their declarations, Green and Northcutt aver they have been residents and domiciliaries of Louisiana at all times between January 1, 2013 and the present; that Green transferred his entire interest in LBG to Northcutt on January 1, 2013; that the "transfer took place and was signed" in Louisiana; that LBG is a real estate holding company with all of its holdings located in Louisiana; and that LBG's bank account is located in Louisiana. (Docs. 17-1, 17-2). In addition, Green avers that he lives almost exclusively off of Social Security benefits, that he is "not in particularly good health," and that

it would be a substantial physical and financial hardship for him to travel to Alabama for a trial on this matter. (Doc. 17-1 at 1). Northcutt likewise asserts that it would be a substantial hardship for her to travel to Alabama for a trial because she is a widow and single parent, lacks a steady income, and is responsible for driving her youngest child roughly thirty miles to and from school each day. (Doc 17-2 at 1).

SEPH filed a response in opposition to the motion and attached a number of exhibits thereto. In its response, SEPH points out that in November 2014, this Court observed in SEPH I that SEPH had alleged in its application for a charging order that Green was indebted to SEPH as a result of the September 2013 judgment, and that Green held membership interests in multiple Alabama LLCs, including LBG. (Doc. 25 at 3); see SEPH I, ECF No. 133, 135. SEPH further notes that in the same order, the Court stated that SEPH's application would be granted without further action by the Court unless Green filed objections containing valid authority by November 21, 2014. (Id.). SEPH points out that despite being afforded the opportunity to do so, Green filed no objection stating that he did not hold a membership interest in LBG; thus, the charging order took effect on November 26, 2014. (Doc 25 at 3); see SEPH I, ECF No. 133. In addition, SEPH attaches documentation showing that the alleged assignment was not registered with the Alabama Secretary of State, whose records continue to list Green

as LBG's sole member.  (Doc. 25-2).  SEPH also attaches a January 2018 bank account statement for LBG, which lists a Foley, Alabama address for the company.  (Doc. 25-3).  In addition, SEPH attaches LBG's 2014 General Ledger, which reflects "Jeff" as "Partner One" and lists payments to Jeff Green.  (Doc. 25-4).  SEPH also attaches documentation from what it represents is an April 2013 bank account application by Green and Northcutt, which lists an Alabama address for Green and includes a copy of Jeff Green's Alabama driver's license.[6]  (Doc. 25-8).  SEPH argues that the "evidence suggests that Northcutt and Green both lived in Alabama on their alleged transfer date."  (Doc. 25 at 4).

SEPH also notes that the declarations of Green and Northcutt are all that the Moving Defendants have offered to demonstrate that the assignment of Green's membership interest in LBG "took place and was signed" in Louisiana on January 1, 2013.  (Id. at 7; see Docs. 17-1, 17-2).  According to SEPH, the Moving Defendants' counsel later provided "an alleged copy of the transfer document", along with a letter from Green to Northcutt stating that Green was resigning as manager of LBG.  (Doc. 25 at 4, 7).  SEPH attached

_____

[6] Although SEPH alleges that "Northcutt and Jeff Green applied for an account with Prosperity Bank in April 2013[,]" the name "Kirby Green Northcutt" appears nowhere on the accompanying exhibit.  (See Doc. 25 at 4; Doc. 25-8).  Without further information or explanation, the Court can make no determination as to whether Northcutt and "Laurel Kirby Green," whose Alabama driver's license is included in SEPH's exhibit, are the same person.

copies of both documents to its response, and it argues that neither document evidences any connection to Louisiana. (Id.; see Doc. 25-5).

After reviewing the parties' arguments and factual submissions, the Court concludes that transactional venue is properly laid in this forum because, considering the entire sequence of events giving rise to SEPH's fraudulent conveyance claim concerning LBG, events occurring in this district played a substantial role. It is true that the underlying judgment giving rise to the charging order was rendered against Green in Louisiana, the real property owned by LBG is located in Louisiana, and the assignment document was allegedly executed in Louisiana. However, it is undisputed that Green incorporated LBG as an LLC in Alabama in 2005, thereby invoking the benefits and protections of the state's laws and subjecting LBG to Alabama's statutory scheme governing LLCs. (See Doc. 25-2). And, when provided an opportunity in 2014 to object to SEPH's charging application in this Court, Green neither objected nor disavowed a membership interest in LBG. Further, the records reflect that LBG is still an operational Alabama LLC, and the Alabama Secretary of State still lists Green as LBG's sole member and a Foley, Alabama address as the registered office for the company. (See Docs. 25-2, 25-3). Additionally, the assignment document itself makes no mention of Louisiana; instead, it references Mobile County, Alabama in the

heading and states that it was prepared by an attorney in Mobile. (See Doc. 25-5 at 1). Similarly, Green's purported letter to Northcutt resigning from LBG lists a Foley, Alabama address for Northcutt. (Id. at 2). Under the facts and circumstances presented here, the Court concludes that transactional venue is proper in this district because a substantial part of the events and omissions giving rise to SEPH's fraudulent transfer claim regarding the LBG membership interest occurred in the Southern District of Alabama.

The Court also finds that "a substantial part of property that is the subject of the action is situated" in this judicial district. The parties appear to agree that the "property" at issue is the LLC membership interest in LBG, but they disagree about where that membership interest should be deemed "situated" for venue purposes. The Moving Defendants contend that the situs of the membership interest is in Louisiana, where Green and Northcutt are domiciled, while SEPH asserts that the membership interest is located in Alabama, where LBG was formed.

A membership interest in an LLC is intangible personal property. "Intangible property has no physical location; the location or situs of intangible property is a 'legal fiction.'" In re Blixseth, 484 B.R. 360, 366 (B.A.P. 9th Cir. 2012). The location of intangible property varies depending on the purpose to be served:

> The situs may be in one place for ad valorem tax
> purposes; it may be in another place for venue purposes,
> i.e., garnishment; it may be in more than one place for
> tax purposes in certain circumstances; it may be in still
> a different place when the need for establishing its
> true situs is to determine whether an overriding
> national concern, like the application of the Act of
> State Doctrine is involved.

Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co., 392 F.2d 706, 714-15 (5th Cir. 1968)[7] (citations omitted). Since assigning a location to intangible property is necessarily a legal fiction, "the selection of a situs for intangibles must be context-specific, embodying a 'common sense appraisal of the requirements of justice and convenience in particular conditions.'" Af-Cap Inc. v. Republic of Congo, 383 F.3d 361, 371 (5th Cir. 2004) (quoting U.S. Industries, Inc. v. Gregg, 540 F.2d 142, 151 n.5 (3rd Cir. 1976)).

The Moving Defendants cite two venerable cases, Tennessee Coal, Iron & R. Co. v. State, 193 So. 143 (Ala. 1939), and Campbell v. Bagley, 276 F.2d 28 (5th Cir. 1960), for the general proposition that intangible property is located where the owner is domiciled.[8]

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[8] The Moving Defendants also cite Wells Fargo Bank, N.A. v. Barber, 85 F. Supp. 3d 1308 (M.D. Fla. 2015), where the court stated:

> Unlike stock certificates in a corporation, a membership
> interest in a limited liability company is intangible
> personal property, which 'accompanies the person of the
> owner.' Therefore, because Barber resides in Florida,
> Barber's membership interest in Blaker is located with

(Doc. 18 at 6; Doc. 28 at 5).  SEPH distinguishes those cases by noting that both involved tax issues and were handed down decades before the creation of LLCs under Alabama law.  (Doc. 25 at 8).  According to SEPH, "[c]ourts in the United States have held that for purposes other than taxation, the location of a membership interest in a limited liability company is the company's state of formation."  (Id.).

Upon review, the Court finds that the better-reasoned authority supports deeming the subject membership interest in LBG "situated" in Alabama, where the company was formed, for purposes of venue in this case.  In JPMorgan Chase Bank, N.A. v. McClure, 393 P.3d 955 (Colo. 2017), the Colorado Supreme Court addressed the issue of where an LLC member's membership interest is "located" for purposes of determining the enforceability of a charging order.[9]  Id. at 958-60.  The court concluded "that for purposes of determining the enforceability of a charging order, a membership

_____

> her in Florida and is properly subject to *in rem* jurisdiction in this state."

Id. at 1314-15 (internal citations omitted); (see Doc. 28 at 5-6).

[9] Like the Moving Defendants in this case (see Doc. 28 at 5-6), the McClure court noted the statement in Barber, 85 F. Supp. 3d at 1314, that a membership interest in an LLC is intangible personal property that accompanies its owner.  See McClure, 393 P.3d at 959.  However, the McClure court pointed out that the statement in Barber was accompanied by "little analysis," and it approvingly cited another case that relied on cases involving the situs of partnership interests to reach the opposite conclusion.  See id.

interest of a non-Colorado citizen in a Colorado limited liability company is located in Colorado." Id. at 956. The court cited two reasons for its holding:

> First, given that a charging order is a mechanism by which a judgment creditor may enforce its judgment by requiring an LLC to redirect the debtor-member's distributions to the creditor, as a practical matter, the charging order is directed to the LLC. Accordingly, we deem it more appropriate to place the membership interest in the state in which the LLC, and thus the membership interest, was created, as opposed to in whatever state the debtor-member happens to be domiciled at a given time. . . .

> Second, in our view, justice and convenience militate in favor of locating the membership interest in the state in which the LLC was formed. To conclude otherwise (i.e., that the interest lies wherever the debtor happens to be domiciled) could result in substantial uncertainty and confusion. Consider, for example, a hypothetical scenario in which Fowler resided in New York, rather than Arizona, at the time the Arizona judgments were entered. If his membership interests were deemed to be located with him, then the case would involve an Arizona judgment that presumably would be domesticated in New York, followed by the issuance of New York charging orders that would be served on the Colorado LLCs. Such a scenario would understandably give the LLCs pause as to which, if any, of the foregoing orders were binding on them, particularly given the LLCs' or their members' or managers' potential liability were they to misdirect member distributions. . . . And this scenario could become even more uncertain were Fowler to move to a different state while the judgment creditors were seeking to enforce their judgments against him.

> In our view, such a scenario could place a substantial burden on the LLCs, contrary to the above-noted purpose of a charging order, which is to allow a judgment creditor to proceed against a debtor-member's membership interest without impairing the LLC's ability to continue to operate or the interests of its other members.

Id. at 959-60; see also Koh v. Inno-Pac. Holdings, Ltd., 54 P.3d 1270, 1271-73 (Wash. Ct. App. 2002) (in determining whether Washington courts could exercise quasi in rem jurisdiction in creditor's action seeking to enforce a foreign judgment via a charging order against a nonresident company's membership interest in a Washington LLC, holding that the proper situs of the member's interest was Washington, the state in which the LLC was created); Wells Fargo Equip. Fin., Inc. v. Retterath, 928 N.W.2d 1, 7-8 (Iowa 2019), reh'g denied (June 17, 2019) ("For the purposes of determining the enforceability of a charging order, we hold that a member's membership interest is located where the LLC was formed. Our holding aligns with the anomalous characteristics of a membership interest in an LLC, particularly because a charging order is directed to the LLC rather than the individual member since it requires the LLC to redirect the debtor-member's distributions to the creditor. . . . Additionally, Iowa law governs an LLC's 'internal affairs' and '[t]he liability of a member as member and a manager as manager for the debts, obligations, or other liabilities' of the LLC. . . . Locating the membership interest in the state in which the LLC was formed recognizes this authority and promotes uniformity."); LLC CHARGING ORDERS: A JURISDICTIONAL AND GOVERNING LAW QUAGMIRE, 12 No. 3 Bus. Entities 14, 21, 2010 WL 2594393, at *8 ("Because an LLC membership interest is intangible personal property, it must be 'located' somewhere,

and the proper location is the state whose LLC act created the entity (thereby giving rise to the interest).").[10]

The Court finds the above-cited authority persuasive and concludes that a "substantial part of property that is the subject of the action is situated" in the Southern District of Alabama, because the membership interest in LBG that is the subject of count five is "located" here. Accordingly, transactional venue is proper in this judicial district under both prongs of § 1391(b)(2), and the Moving Defendants' motion to dismiss or, alternatively, to

---

[10] The Court also takes note of the Ninth Circuit Bankruptcy Appellate Panel's holding in In re Blixseth, 484 B.R. 360 (B.A.P. 9th Cir. 2012). In Blixseth, the court considered the issue of where an alleged debtor's principal assets, consisting of his membership interest in a Nevada LLC and his partnership interest in a Nevada limited partnership, were "located" for bankruptcy venue purposes. Id. at 365. The court noted that the debtor's interests in the Nevada LLC and partnership were intangible, that the location of intangible property is a legal fiction, and that ascribing a location to intangible property requires a common sense, context-specific analysis. Id. at 366-67. After considering the context of the case, the court concluded that the relevant Nevada statutes implicitly reflected the Nevada legislature's assumption that a member's or partner's interests in a Nevada LLC or limited partnership are "located" in Nevada. Id. at 370. The court also found it "disingenuous" for the alleged debtor to argue that, "although he chose to take advantage of the Nevada statutory scheme in creating the LLLP and LLC, into which he then transferred all of his valuable assets, now Nevada is not a proper venue for his creditors to pursue their efforts to seize and liquidate those assets." Id. Thus, the Court deemed Nevada, rather than the alleged debtor's home state of Washington, to be the location of debtor's interest in the LLC and limited partnership for purposes of venue in the bankruptcy action. Id. at 371.

sever and transfer count five for improper venue, is due to be denied.

### III. <u>**MOTION FOR DISCRETIONARY SEVERANCE AND TRANSFER**</u>

In the alternative, the Moving Defendants request that the Court exercise its discretion to sever and transfer venue of the LBG fraudulent transfer claim to the Eastern District of Louisiana, even if the Court finds venue to be proper in this district. (Doc. 18 at 9-15). "When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer." <u>McCullough v. Royal Caribbean Cruises, Ltd.</u>, 268 F. Supp. 3d 1336, 1352 (S.D. Fla. 2017) (quoting <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1519 (10th Cir. 1991)). Under Federal Rule of Civil Procedure 21, a "court may . . . sever any claim against a party." Fed. R. Civ. P. 21. "It is ultimately within the court's discretion to sever a party or claim to proceed separately from the main action." <u>Clay v. AIG Aerospace Ins. Servs., Inc.</u>, 61 F. Supp. 3d 1255, 1271 (M.D. Fla. 2014). "Among the factors considered in exercising that discretion include whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." <u>Fisher v. Ciba Specialty Chems. Corp.</u>, 245 F.R.D. 539, 541 (S.D. Ala.

2007).  "In addressing questions of joinder and severance, 'the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  AF Holdings, LLC v. Does 1-162, 2012 U.S. Dist. LEXIS 17894, at *5, 2012 WL 488217, at *2 (S.D. Fla. Feb. 14, 2012) (citation omitted).  The touchstone of the severance analysis "is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did."  Fisher, 245 F.R.D. at 542.

The question of the transfer of venue is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In determining whether transfer of venue is appropriate, a court considers the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  The Eleventh Circuit has determined that courts should be somewhat restrictive in transferring actions, stating that "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations."  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quotation omitted).

Here, the factors heavily weigh against severing the LBG fraudulent transfer claim from SEPH's other claims for the sole purpose of transferring that claim to the Eastern District of Louisiana.  As noted, in this lawsuit, SEPH alleges that after it obtained a multi-million-dollar judgment against Green and others, Green made three fraudulent transfers, either personally or via his alleged alter ego Green & Sons, with the intent to hinder, delay, and defraud SEPH and to place his assets beyond SEPH's reach.  (See Doc. 1).  There is no question that these claims arise from the same series of transactions or occurrences and present common questions of law and fact.[11]  If this Court were to sever and transfer the LBG fraudulent conveyance claim to Louisiana, the other three claims against Green and the other Defendants would

---

[11] "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."  Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1323 (11th Cir. 2000) (quotation omitted), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).

remain here.  The interests of efficiency and judicial economy strongly suggest that these related claims should be resolved by one court instead of two.  See Nettles v. Daphne Utils., 2014 U.S. Dist. LEXIS 58302, at *7-8, 2014 WL 1668535, at *2 (S.D. Ala. Apr. 28, 2014) ("[F]racturing this case into three separate lawsuits would be inefficient, and would not advance the objectives of convenience, judicial economy, expediting resolution of disputes and eliminating unnecessary litigation. . . . By contrast, it would likely require overlapping discovery in triplicate and similar motion practice to be conducted by the same lawyers thrice."); Sec. & Exch. Comm'n v. Martin, 2018 U.S. Dist. LEXIS 236481, at *10, 2018 WL 3827206, at *4 (M.D. Fla. Feb. 15, 2018) ("[T]he Court finds that judicial economy is not served by severing or ordering a separate trial because either action would force the SEC to duplicate its efforts, prosecuting parallel suits in two different venues based on the same allegedly fraudulent scheme and similar unlawful conduct, which in all likelihood will require overlapping witnesses and documentary proof.  The Court will not needlessly waste judicial resources by subjecting another court to the burden of presiding over a case so closely related to the one already unfolding here."); McCullough, 268 F. Supp. 3d at 1353 (stating that a court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be

transferred that partial transfer would require the same issues to be litigated in two places") (quotation omitted).

The Court is unpersuaded that Green and Northcutt will suffer any significant prejudice by litigating the LBG claim in this Court instead of in Louisiana. Green is named as a Defendant in *all* of SEPH's claims in this action. (<u>See</u> Doc. 1). Although his attorney represents that Green has "no intention of fighting" the other counts of this complaint (Doc. 28 at 10), Defendants Coastal Commercial and Wolf Creek[12] *are* fighting those counts (<u>see</u> Docs. 19, 20), and Green will still presumably participate in the proceedings in this Court, including as a key witness. It would seem that it would be more convenient and less costly for Green to avoid splitting this case into separate lawsuits. Moreover, any inconvenience that Green and Northcutt might experience by attending trial outside of their home state is certainly no greater than the inconvenience, delay, and increased costs that SEPH would be forced to incur if the Court were to sever and transfer the LBG fraudulent transfer claim and require litigation of this case in two courts. Hence, the relevant factors weigh against the severance and transfer of the LBG fraudulent transfer claim, and

---

[12] The Court notes that Green's son, David Green, is the sole member of both Coastal Commercial and Wolf Creek. (<u>See</u> Doc. 1 at 2; Doc 19 at 1; Doc. 20 at 1).

the undersigned recommends that the Moving Defendants' request for discretionary severance and transfer be denied.[13]

## IV. CONCLUSION

For the reasons set forth above, the undersigned recommends that the Moving Defendants' motion to dismiss, or in the alternative, to sever and transfer venue of the LBG fraudulent transfer claim (Doc. 17), be **DENIED.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period

---

[13] Because the relevant factors weigh against severing the LBG fraudulent transfer claim from SEPH's other claims, the Court need not proceed to the next step by addressing the factors relating to transfer under § 1404(a). See Martin, 2018 U.S. Dist. LEXIS 236481, at *7, 2018 WL 3827206, at *3.

for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **1st** day of **September, 2020.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**